FILED

NOT FOR PUBLICATION

DEC 02 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| EDGAR ROVIDIO ORTEGA-SANCHEZ, AKA Edgar Rovidio Ortega, | ) ) ) | No. 12-72514 |
| | ) | Agency No. A078-462-913 |
| Petitioner, | ) ) | MEMORANDUM* |
| v. | ) ) | |
| LORETTA E. LYNCH, Attorney General, | ) ) ) | |
| Respondent. | ) ) | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 19, 2015**
San Francisco, California

Before: FERNANDEZ and M. SMITH, Circuit Judges, and SCHEINDLIN,***
District Judge.

---

*This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

***The Honorable Shira Ann Scheindlin, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

Edgar Rovidio Ortega-Sanchez, a citizen of Guatemala, petitions for review

of the Board of Immigration Appeals' (BIA) denial of his motion to reopen. *See* 8

U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(a), (c). We deny the petition.

Ortega sought to reopen to assert new claims for asylum,[1] withholding of

removal,[2] and Convention Against Torture relief.[3] Ortega did not file his motion to

reopen within ninety days,[4] but he asserts that the BIA erred when it denied his

untimely motion on the basis that he had not shown changed circumstances that

would justify the late filing.[5] We disagree. We have reviewed the record and

cannot say that the BIA abused its discretion[6] when it determined that the evidence

he presented did "not reflect changed circumstances in Guatemala" that were

material to his claim for relief.[7] Ortega premised his prior application for asylum

---

[1]8 U.S.C. § 1158.

[2]8 U.S.C. § 1231(b)(3).

[3]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted* Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, implemented at 8 C.F.R. § 1208.18.

[4]*See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).

[5]*See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

[6]*See Toufighi v. Mukasey*, 538 F.3d 988, 992–93 (9th Cir. 2008).

[7]*See Chandra v. Holder*, 751 F.3d 1034, 1036–37 (9th Cir. 2014); *Go v.*

(continued...)

2

and other relief on the activities of the allegedly corrupt treasury police force of which he had previously been a non-corrupt member and from which he was in danger. He asserted that he left the country after known members of that police force came to seize him. Now he wishes to premise an application on the activities of and death threats by political opponents of his uncle (and himself).[8] He suggests that those persons, or their minions, were the ones who came to seize him before he left the country. But that does not tend to show a material change in circumstances within the country or otherwise; it simply shows a change in his own claims—his focus. In fact, the evidence before the BIA indicates that the conditions in the country,[9] and his own circumstances, remain essentially unchanged.[10] Moreover, based on inconsistent statements by Ortega, the BIA could properly express some skepticism about Ortega's volte-face regarding the

---

[7](...continued)
*Holder*, 744 F.3d 604, 608–09 (9th Cir. 2014)*; Toufighi*, 538 F.3d at 996.

[8]We note that the affidavits that he submitted with his motion to reopen indicate that he left the country in the first place because of those political threats.

[9]*Compare* U.S. Dep't. of State, Bureau of Democracy, H.R. and Lab., 2005 Human Rights Reports: Guatemala 1, 6 (Mar. 8, 2006), *with* U.S. Dep't. of State, Bureau of Democracy, H.R. and Lab., 2010 Human Rights Reports: Guatemala 1, 6 (Apr. 8, 2011).

[10]The widespread social violence in the country has also remained the same and speaks to otherwise unexplained deaths of various individuals to whom Ortega was related or with whom he worked or was friendly.

treasury-police actions and his turning to focus on claimed political enemies.[11]

Petition DENIED.

---

[11]To the extent Ortega suggests that the BIA should have granted reopening sua sponte, we have no jurisdiction to consider that claim. *See Go*, 744 F.3d at 609–10.