**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CIPTO CHANDRA,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent*.

No. 10-70029

Agency No.
A079-522-209

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 13, 2014—Pasadena, California

Filed May 12, 2014

Before: Richard A. Paez and Jacqueline H. Nguyen,
Circuit Judges, and J. Frederick Motz, Senior District
Judge.[*]

Opinion by Judge Paez

---

[*] The Honorable J. Frederick Motz, Senior District Judge for the U.S.
District Court for the District of Maryland, sitting by designation.

# SUMMARY[**]

## Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of an untimely motion to reopen.

The panel held that a petitioner's untimely motion to reopen may qualify under the changed conditions exception in 8 C.F.R. § 1003(c)(3)(ii), even if the changed country conditions are made relevant by a change in the petitioner's personal circumstances. The panel held that the Board therefore erred insofar as it determined that petitioner's post-removal conversion to Christianity rendered him ineligible to file an untimely motion under the changed conditions exception.

The panel remanded for further proceedings after concluding that the Board abused its discretion when it failed to assess petitioner's evidence that treatment of Christians in Indonesia had deteriorated since his 2002 removal hearing.

## COUNSEL

Gihan L. Thomas (argued), Law Offices of Gihan Thomas, Los Angeles, California, for Petitioner.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

D. Nicholas Harling (argued); Nairi S. Gruzenski, Trial Attorney; Cindy S. Ferrier, Senior Litigation Counsel; Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C. for Respondent.

**OPINION**

PAEZ, Circuit Judge:

Petitioner Cipto Chandra ("Chandra") petitions for review of the Board of Immigration Appeals' ("BIA") denial of his motion to reopen removal proceedings. After Chandra's order of removal became final in 2005, he converted to Christianity. On March 9, 2009, Chandra filed an untimely motion to reopen on the basis that religious persecution against Christians in Indonesia had worsened since his previous hearing. Because the BIA failed to consider Chandra's evidence of changed conditions in Indonesia in light of his conversion to Christianity, we grant the petition and remand for further proceedings.

**I.**

Chandra, an Indonesian citizen of Chinese descent, entered the United States in 1998 and overstayed his visa. In 2001, after the Department of Homeland Security initiated removal proceedings, Chandra conceded removability and filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") on the ground that he faced persecution in Indonesia because of his Chinese ethnicity. In January 2002, the Immigration Judge ("IJ") denied Chandra's application

for asylum as untimely, and his application for withholding of removal and CAT protection because he failed to carry his burden for either form of relief. The IJ granted Chandra's application for voluntary departure. In October 2003, the BIA dismissed his appeal. We denied Chandra's petition for review in February 2005. *Chandra v. Gonzales*, 123 F. App'x 792 (9th Cir. 2005).

Chandra did not leave the country after his order of removal became final. While remaining in the country, he converted to Christianity and began to attend church on a regular basis. Chandra filed a motion to reopen based on "changed circumstances in Indonesia." His motion referred to "escalated and widespread persecution of Christians by Islamic fundamentalists [and the] Indonesian military, with the tacit cooperation of the Indonesian government." For support, Chandra submitted the 2007 International Religious Freedom Report, prepared by the United States Department of State ("State Department"), news articles from 2008 reporting on violence perpetrated by Muslims against Christian religious leaders and followers in Indonesia, a 2009 travel warning issued by the State Department cautioning "Americans or other Western citizens and interests" about general terrorist threats in Indonesia, and other materials. Chandra also presented a letter from Tara Ongkowidjojo, the Church Administrator at City Blessing Church in Temple City, California, stating that Chandra "has been regularly attending [] church . . . and attends the Care Cell Fellowship meeting every week."

In December 2009, the BIA denied Chandra's motion. In a brief order, the BIA cited to 8 C.F.R. § 1003.2(c)(iii)(2) and explained that "[c]hanges in the respondent's personal circumstances in the United States do not constitute

sufficiently changed circumstances so as to allow for the untimely reopening of these proceedings."

Chandra filed a timely petition for review of the BIA's decision. We have jurisdiction pursuant to 8 U.S.C. § 1252.

## II.

The Supreme Court has recognized that "[t]he motion to reopen is an important safeguard intended to ensure a proper and lawful disposition of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (internal quotation marks and citations omitted). Motions to reopen, however, are generally disfavored because "every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). Thus, "[t]here is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *I.N.S. v. Abudu*, 485 U.S. 94, 107 (1988). "Mindful of the [BIA's] broad discretion" in deciding whether to grant a motion to reopen, "courts have employed a deferential, abuse-of-discretion standard of review." *Kucana*, 558 U.S. at 242 (internal quotation marks and citations omitted). The BIA abuses its discretion when its denial of a motion to reopen is "arbitrary, irrational or contrary to law." *Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir. 2004) (internal quotation marks and citations omitted). We review de novo the BIA's conclusions on purely legal issues. *Mejia v. Ashcroft*, 298 F.3d 873, 876 (9th Cir. 2002).

**III.**

Generally, a petitioner may file only one motion to reopen removal proceedings, and must do so within ninety days of the "final administrative decision." 8 C.F.R. § 1003.2(c)(2); 8 U.S.C. § 1229a(c)(7)(C)(i). There is no dispute that Chandra failed to meet the ninety-day deadline. He contends, however, that his motion and supporting evidence fall within an exception "based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing."[1] 8 C.F.R. § 1003.2(c)(3)(ii) ("changed conditions exception"). Chandra argues that the BIA abused its discretion when it denied his motion because there is "material evidence of escalated and widespread persecution of Christians in . . . Indonesia." The Government argues that the BIA properly denied his motion because the "alleged changes in country conditions are irrelevant unless considered in the context of [Chandra's] change in personal circumstances, i.e. his conversion to Christianity."

The plain language of 8 C.F.R. § 1003.2(c)(3)(ii) does not preclude an untimely motion where a change in the petitioner's personal circumstances is a necessary predicate to the success of the motion. The regulation establishes three evidentiary requirements: (1) "changed circumstances arising in the country of nationality or deportation"; (2) evidence that is "material"; and (3) evidence that was not "available" and could not have been "discovered or presented" at the time of

---

[1] The text of 8 C.F.R. § 1003.2(c)(3)(ii) states that the changed conditions exception applies to applications for asylum and withholding of removal. In *Go v. Holder*, 744 F.3d 604, 607 (9th Cir. 2014), we held that 8 C.F.R. § 1003.2(c) applies to applications for CAT relief, as well.

the previous hearing. *Id.* Although the first requirement would prohibit a motion to reopen that relies *solely* on a change in personal circumstances, it does not prohibit a motion to reopen based on evidence of changed country conditions that are relevant in light of the petitioner's changed circumstances. In other words, if there is sufficient evidence of changed conditions in the receiving country, there is nothing in the plain language of the regulation that prevents a petitioner from referring to his personal circumstances to establish the materiality of that evidence.

The cases the Government cites for support are distinguishable because they address motions to reopen that rely *solely* on changes in personal circumstances and thus fail to satisfy the first evidentiary requirement. *See Najmabadi v. Holder*, 597 F.3d 983, 991 (9th Cir. 2010) (recognizing that the petitioner's desire to become politically active in her native country was insufficient to demonstrate changed country conditions there); *Lopez-Almaraz v. Holder*, 608 F.3d 638, 640 (9th Cir. 2010) (holding that the petitioner's HIV diagnosis was "a change in his personal circumstances . . . not a change in circumstances arising in [Guatemala]" (internal quotation marks and citations omitted)); *He v. Gonzales*, 501 F.3d 1128, 1132 (9th Cir. 2007) (holding that the petitioners' birth of their third child was a change in personal circumstances, not a change in country conditions). These cases do not resolve the dispute at hand.[2]

---

[2] Notably, we signaled in *He* that motions to reopen on the basis of the changed conditions exception may be viable when there has been an underlying change in personal circumstances. 501 F.3d at 1132. After stating that a change in personal circumstances "alone is insufficient," we concluded that "absent additional evidence of changed circumstances in China following the BIA's issuance of the Hes' final order of removal, we must deny the petition for review." *Id.* We cited to *Chen v. Gonzales*,

Although this is a matter of first impression for our circuit, the Sixth, Seventh, and Eleventh Circuits have each determined that the BIA must consider changed country conditions as they relate to a petitioner's change in personal circumstances. In *Shu Han Liu v. Holder*, 718 F.3d 706, 707 (7th Cir. 2013), the Chinese petitioner originally applied for asylum on the basis that, if removed, she would be persecuted because she had refused to marry a Communist Party official before leaving the country. In 2004, her application was denied and she was ordered removed. *Id.* She defied the removal order, however, and in 2011 filed a motion to reopen her removal proceedings on the basis that she had converted to Christianity and would face persecution in China for her newfound religious beliefs. *Id.* The Seventh Circuit held that, "if her conversion was sincere, [there was no] basis . . . for treating her differently from someone who had converted to Christianity before coming to the United States[.]" *Id.* at 709; *see also En Gao v. Holder*, 721 F.3d 893, 895 (7th Cir. 2013) (holding that a genuine conversion to Christianity, accompanied by an appreciable deterioration of treatment towards Christians in China, could form the basis of an untimely motion to reopen). After reviewing the new evidence, the court determined that because the petitioner's conversion to Christianity placed her at a greater risk at the time of her motion to reopen than she would have faced—had she been a Christian—at the time of her removal hearing in

490 F.3d 180, 184 (2d Cir. 2007), and noted that *Chen* "le[ft] open the possibility that a petitioner whose changed personal conditions (which result in his falling into a category of individuals threatened by changed country conditions) might be able to rely on those changed country conditions in an untimely motion to reopen where the underlying change in personal circumstances postdated his order to depart." *He*, 501 F.3d at 1132 (internal quotation marks, citations, and alterations omitted).

2002, the BIA erred in denying her motion to reopen. *Shu Han Liu*, 718 F.3d at 710–13.

The Sixth Circuit has also recognized that a change in personal circumstances, when accompanied by a change in country conditions, may warrant a grant of a motion to reopen removal proceedings. *Yu Yun Zhang v. Holder*, 702 F.3d 878, 879–80 (6th Cir. 2012). In *Yu Yun Zhang*, the BIA denied the petitioner's motion to reopen, filed in 2011, even though it acknowledged that the petitioner had successfully demonstrated that the Chinese government had intensified its repression of Christians since 2002, when the petitioner was first ordered removed. *Id.* at 880. The Sixth Circuit held that the petitioner's personal conversion to Catholicism after her removal order did not "foreclose the possibility" that a change in country conditions could warrant reopening of proceedings. *Id.* The court distinguished the scenario where there is "separate but simultaneous changes" in personal circumstances and country conditions from a scenario where there is a "purely personal change in circumstances." *Id.*

Finally, the Eleventh Circuit has held that, when a petitioner files a motion to reopen on the basis of changed country conditions, the petitioner's post-removal change in personal circumstances will not bar the motion. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1258 (11th Cir. 2009). In *Jiang*, the petitioner, a Chinese citizen, was ordered removed *in absentia* in 1999. *Id.* at 1254. However, she remained in the country and had two children. *Id.* In 2007, she filed a motion to reopen on the basis that, if removed, she would be persecuted for violating China's one-child policy. *Id.* She supported her motion with evidence that forced sterilizations in her home province and home town were on the rise. *Id.* at 1255. The BIA denied the motion because it was "principally

based on her decision to remain in the United States and give birth to several children[,] which constitutes changed personal circumstances, not changed circumstances arising in the country of nationality." *Id.* at 1258 (internal quotation marks, citations, and alterations omitted). The Eleventh Circuit reversed. *Id.* Explaining that "the BIA badly misconceived Jiang's petition," the court held that the increased enforcement of the one-child policy in her home province and home town formed an adequate basis for her motion to reopen. *Id.*

We join our sister circuits and hold that a petitioner's untimely motion to reopen may qualify under the changed conditions exception in 8 C.F.R. § 1003(c)(3)(ii), even if the changed country conditions are made relevant by a change in the petitioner's personal circumstances.[3] The regulation required that Chandra put forward material and previously unavailable evidence that the treatment of Christians had worsened between his previous hearing in 2002 and the filing of his motion to reopen. *See* 8 C.F.R. § 1003.2(c)(3)(ii);

---

[3] Additionally, the First Circuit's analysis in *Ming Chen v. Holder*, 722 F.3d 63 (1st Cir. 2013), suggests that a petitioner can prevail on a motion to reopen on the basis of changed country conditions made relevant by a change in personal circumstances. The First Circuit distinguished between the petitioner's "personal decision" to join the Chinese Democracy Party ("CDP"), which was a mere change in personal circumstances that did not warrant reopening, and evidence that treatment of CDP members had worsened materially in China over the relevant period, which would warrant reopening under the changed conditions exception. *Id.* at 66–68. Although the court found that the evidence did not support the petitioner's motion, the import of the analysis was that the petitioner could have established a basis for reopening under the exception if he had shown both that he joined the CDP *and* that the Chinese government had increased its persecution of CDP members over the applicable time period.

*Malty v. Ashcroft*, 381 F.3d 942, 946 (9th Cir. 2004). The BIA denied Chandra's motion without considering a substantial amount of evidence purporting to establish that persecution of Christians in Indonesia had worsened. "While the [BIA] has broad discretion in ruling on a motion to reopen, it must show proper consideration of all factors . . . in determining whether to grant a motion to reopen." *Toufighi v. Mukasey*, 538 F.3d 988, 993 (9th Cir. 2008). The BIA abused its discretion when it failed to assess Chandra's evidence that treatment of Christians in Indonesia had deteriorated since his 2002 removal hearing. *See Mejia*, 298 F.3d at 879 (holding that the BIA abused its discretion when it completely failed to consider the petitioner's argument for reopening proceedings). Further, the BIA committed legal error insofar as it determined that Chandra's post-removal conversion to Christianity rendered him ineligible to file an untimely motion under the changed conditions exception.

The Government urges that we take heed of the "policy interest . . . in preventing applicants from orchestrating changes that serve their self-interest." *See Larngar v. Holder*, 562 F.3d 71, 77–78 (1st Cir. 2009). We realize that, as with any form of relief available to immigrants and refugees seeking to make their life in this country, there is some risk of abuse. Our decision today serves another worthy policy interest. Indeed, it is one of our oldest and most foundational policy interests—allowing individuals to freely choose and exercise their own religion. The timing of one's religious choice is not determinative of one's rights. "Congress has recognized and denounced acts of religious persecution," and it is the "policy of the United States to stand with the persecuted." *Negusie v. Holder*, 555 U.S. 511, 553 (2009) (citing 22 U.S.C. §§ 6401(a)(5)–(7), (b)(5)). If an

individual's religion places him at risk of persecution, then this country provides a refuge.

## IV.

For the reasons stated above, we grant Chandra's petition and remand to the BIA for further proceedings.

**PETITION GRANTED AND REMANDED.**